2011-2025. In Ray Cochran. Mr. Bowler. Thank you very much, George Bowler, on behalf of Cardi Cochran. Dr. Cochran is in the audience today. Unfortunately, Rosemary Bergsma, who intervened on behalf of co-inventor Rudolf Bergsma, upon his passing, is not able to be here today. The issues presented for the court's decision involve statutes section 35 U.S.C. 112, 35 U.S.C. 103A. We are asking this court to reverse a decision by the Patent Office Board of Appeals and Interference, which rejected claims in Cochran's continuation in part CIP patent application. We will also address the application of law to that rejection and show why that decision is in error. During the early pendency of Cochran's CIP patent application, there was a development which makes the facts of this case we submit rather unusual. That development was the issuance of patent 6868744 to Brzezowski et al. on March 22, 2005. How that development affected the Patent Office examination of Cochran's CIP patent application is documented and discussed at length in the briefs. I would like to briefly give that background. Examiner Williams, who had examined Cochran's patent application, which became U.S. Patent 6851315 on February 8, 2005, and who was supervising Cochran's CIP application, had also been in charge of the Brzezowski patent application. Without any rejection on prior art, Examiner Williams approved all of Brzezowski's claims. While contemporaneously, he was rejecting the claims for the same invention in Cochran's parent application, although the claims were not word-for-word identical. When Cochran made a business decision to pursue the rejected claims in a continuing application, he informed the Patent Office on September 9, 2004. Although at that time, Cochran had no knowledge at all of the pending Brzezowski patent application, Examiner Williams knew that Cochran's patent application was on, and had priority to Brzezowski's. Did the examiner acknowledge that he or she knew that there was a possible conflict? Did the examiner explain the actions that you're complaining about? May I explain further? At the time, in September 2004, Cochran informed that he would have to, I'm sorry, in March, once he became aware of the issuance of the Brzezowski patent, Cochran informed the Patent Office within a month that it had made a mistake, and it would be necessary for him to seek an interference to resolve the issue of priority of invention. And that is where the Patent Office began the formal examination process. What happened was, the claims were rejected within one month after Cochran had informed the Patent Office. It was hastily prepared by Examiner Williams, and Cochran's claims were rejected on, as anticipated by U.S. Patent 6564-632 to Ross Jr. I'll mention Ross Jr. at more length as we continue. This was a patent that Examiner Williams had considered during the examination of the Brzezowski application, and he did not consider the Brzezowski claims to be anticipated by or rendered obvious over that Ross Jr. patent. Does that respond to the court's question? Well, are you saying that this was reflected in an official action, or that this was a state of mind, or that there was a conversation to elaborate what, from what you tell us was an irregularity? Oh, yeah. Cochran presented, Cochran presented the appropriate papers for seeking an interference. The interference was not declared because Cochran's claims continued to be rejected by Examiner Williams. On the basis, two grounds, under 35 U.S.C. 112, and under 35 U.S.C. 103A as being obvious. That continued throughout the examination process, and had led to an appeal to the board, and then subsequently the appeal to this court. The issue under 35 U.S.C. 112 is discussed in our briefs. It involves the use of a phrase, a wiper and contact assembly disposed at least in part in the housing. It is the phrase at least in part, which was used as the reason for saying that the claim would be rejected under 35 U.S.C. as not being supported by the original disclosure. In Cochran's briefs, that issue is very thoroughly discussed, and we believe, and submit to this court, that the use of that phrase is fully supported by Cochran's disclosure going back to his priority applications, and the case law supports that. In other words, the phrase was not exactly in the original application text. However, it was shown in the drawings and adequately explained. There was also the second ground of rejection under 35 U.S.C. 103A. That's what I'd like to discuss right now, because we want to focus on the use of KSR, which was relied upon by the Board of Appeals to reject pending claims. KSR says, quote, the obviousness analysis cannot be confined by formalistic conception of the words teaching, suggestion, motivation. We submit to the court that this means the TSM test is not the exclusive test. As applied here, that test must fail because the secondary reference, this is the Ross Jr. patent, teaches no modification of the primary patent to solve a corrosion problem which was recognized in the art. KSR pronouncement two, the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. By use of the word likely, the pronouncement does not compel a conclusion of obviousness we submit. It is understood to continue the established and recognized principle that objective evidence of non-obviousness must also be considered. Cochran has supplied a significant abundance of non-obviousness. The evidence is set forth in Cochran's briefs. The pronouncement use of the terms familiar methods, known methods, and predictable results would seem to be left to future interpretation. All that the decision of the Board of Appeals says is, quote, we agree with the examiner's conclusion that it would have been obvious to modify the principal reference by Blair in view of Ross's teaching of a sealed magnetically coupled system. So going back to the evidence that you say that Cochran submitted the objective evidence, it seems to me that the board and the examiner both found that these were just arguments that were made, that they were not factually supported by any evidence or affidavit. Well, sir, we've addressed that issue in the briefs. And if I may, I can go to those right now. I was prepared to discuss those. The objective evidence is the recognition of this corrosion problem as early as the date of the Rao patent, 20 years before Cochran's filing date. Fibler also recognized the problem. Aside from the prior arc, because you're looking at objective evidence or you're arguing objective evidence, did you submit any evidence or any declarations or affidavits in support of the argument? Sir, I'm not aware of any rule that requires a declaration. We're relying on the documentation of record, which is in the patent office file history. We have a precedent in RACON that says that it requires the applicant to submit actual evidence, for example, of long-felt need, as opposed to mere argument. And you did argue long-felt need. No, sir, we did not. That's incorrect. We've addressed that in the brief. All we've done is point out there existed this corrosion problem, recognized as early as 1982, possibly earlier. We have shown that the problem continued to be recognized in the arc, even as late as 2002, in this Society of Automotive Engineers paper, which is of record. I'm not sure I understand why. What you're saying is you had argued long-recognized problem and not long-felt need. It seems to me it's the same thing. What's the difference? Well, I can understand your point, sir. And it's not really a matter of choice of words. We simply do not use what is exactly stated in the patent office argument. It says that Cochran contended there was long-felt need. We are simply identifying there was a problem. And the problem continued and continued. Then the next and very important piece of objective evidence is the fact that the patent office granted the patent to Kershelsky without rejection of any claim. And using two of the same references, two of the same references were cited in Borshelsky that are being applied against Cochran's claims. The third reference, which is involved in Cochran's claims, Weibler, is no better than a patent that was already of record in the examination of the Borshelsky patent application. And that is a Brazilian patent. We also refer to that in our briefs. The question that I've been really, that I'm not sure of the answer of, let's just assume that the objections that were made of Mr. Cochran's application were meritorious. And that the office made a mistake in issuing the later filed patent without citing references and so on. Whether or not they were the same examiners is a different question. If, in fact, there were valid references to be cited, arguments to be made, you really are stuck with that prosecution procedure, are you not? It's not a matter of entitlement to an interference. Well, this is the question. Is it really a question of entitlement to an interference if, in fact, a patent was issued with claims that should not have been issued? No, it is not a matter of entitlement. It's a condition that we show that we have allowable claims in the patent application and that they are actually allowed by the patent office. Allowable because they were allowed in another case? No. We show our own case with reference. That's why I went through these pronouncements from KSR. I want to show that these factors and especially the factual evidence of non-obviousness show that this was indeed not an obvious invention. Well, that's really my question. What's before us is the correctness of the board's decision, the correctness of the rejection. Is it not whether or not the office made a mistake in some other case? And whether or not there was a mistake, they can't declare an interference unless your claims are found allowable. We have argued the point in ours. We do not want to be addressing what concerned, what went on in the Brzozowski patent application, except to show that it apparently has prejudiced the examination of Cochran's application for whatever reason. We've talked about this in the briefs. And so we are not relying, we're not saying just because the patent office granted another patent to, that perhaps, that it did not in fact have priority, that we should be automatically entitled to an interference. No. We submit, we have shown evidence of non-obviousness. We submit that the court, we ask the court to consider that and to say, yes, you have shown that this is non-obvious. Then that's what we see. Thank you. Let's hear from the office. We'll save your rebuttal time, Mr. Brzozowski. Thank you. Ms. Rasheed. May it please the court. Cochran's invention is obvious over the sighted prior art because it is a substitution of one solution to Rao's corrosion problem with another equally obvious solution to that same problem. Here, Liebler teaches all the claim limitations except for following the position of the float arm through magnetic coupling. Rao identifies the problem in the time. Rao teaches that modern fuels contain methyl alcohol. Methyl alcohol can corrode the electrical components that are in the center assembly. Rao goes even further. Rao tries to show you where the technology should go. Rao teaches that one solution to that problem is to use sealed housings to circumvent that corrosion problem. Liebler is one solution to Rao's corrosion problem. Liebler contains two embodiments where the hole in the enclosure is sealed in two different ways. One way is using a flexible member, and the other way is using a magnetic sealing system. A skilled artisan wouldn't just sit fat and happy with this Liebler solution to Rao's corrosion problem. A person of skill in the problem, especially in light of Ross's disclosure. Here, Ross would be an ordinary artisan to at least one other solution to Rao's corrosion problem, and that solution is to replace Liebler's pivot connection with magnetic coupling. Ross teaches that it is possible to eliminate the hole that is created from the shaft entering the housing by using a completely sealed enclosure and monitoring or controlling the electrical circuitry using magnetic coupling. Thus, it would have been obvious to a person of skill in the art to combine Ross's magnetic coupling with Liebler's fluid-operated sender in order to solve the corrosion problem of Rao. This is almost a pre-KSR obviousness analysis in that you have a substitution of one solution to another, and there's no requirement that there has to be an express suggestion to substitute one solution for another. Much of the remainder of Cochran's arguments are directed to how he reached disparate results in this case. However, the Brzezowski pattern and its corresponding prosecution history is not relevant to any appealable issue in this application. Under this court's precedent, each application is judged on its own merits. There is no requirement that a rejection under 112 or 103 should have been made in Brzezowski in order for it to be correct in this application. With regards to the written description rejection, there is substantial evidence that supports the examiner's fact-finding that the claims embrace embodiments not described in the written description. Under Ariadne, objective inquiry into the four corners of the specification for the perspective of a person of skill in the art should reveal that the inventor had possession of the full scope of the claimed invention. Ms. Rashid, let's assume for the sake of conversation that it's pretty clear on the face of it that a mistake was made in the examination of this other later filed patent. Well, when you look at them, it's hard to find any significant differences and there weren't even any references cited. Does the office have a procedure for putting a case back into examination when it makes a mistake? Absolutely, Your Honor. Is that being done here? It is not to my knowledge, Your Honor. Cochran is free to file a re-examination in order to raise a substantial new question of patentability with regards to Brzezowski. The examiner, Brzezowski, did not consider the same prior art that was before him when considering this application. So, you know, Mr. Cochran does have that option available to him. Also, this projection does not leave Mr. Cochran empty-handed. Mr. Cochran has another patent, the Burgsma patent, and that patent has claims that are substantially similar to the claims in this application. In fact, there was an obviousness-type bill patenting rejection over Burgsma and Mr. Cochran filed a terminal disclaimer in order to co-overcome that rejection. So, it's possible that another option that Mr. Cochran has is to provoke an interference in district court based on Burgsma's claim in light of the Brzezowski patent. So, there are multiple options that Cochran has in this case. So, with respect to the written description rejection, we recognize that in general, that something that is shown as to be disposed wholly within something is inherently disposed at least in part within it. However, here the parties agree on the scope of the claim. The wiper and the contact assembly here is capable of being both inside and outside of the housing. In fact, the appellants point to something that is outside of the housing and being part of the wiper and contact assembly. Cochran makes that very clear in his reply to the court. However, that allegation is unsupported in the attorney argument. There is no affidavit or declaration to support that. Moreover, the argument that Terminal 132 is somehow part of the wiper and contact assembly doesn't necessarily make sense in the context of this case. One, because that terminal is outside of the enclosure and is not in an assembly relationship with the wiper and contact assembly, which the applicant identified as being contact arm 62 and contact 70. Moreover, Cochran's argument doesn't fit within the context of the claim language here. Claim 14 treats the resistor element as a separate element from the wiper and contact assembly. If the resistor element is a separate element and in order to get from the contact arm to Terminal 132, you would have to go to the resistor element. It would make sense that the terminal is also not a part of the wiper and contact assembly. It is yet just another argument supporting that the appellant's disclosure only shows possession of one embodiment for the full scope of the at least in part claim language. Thus, there is substantial evidence supporting the examiner's fact-finding here. A skilled artisan would not recognize the disclosure of a wiper and contact assembly that is not completely disclosed in the housing. There are no further questions, Your Honor. No more questions? Good. Thank you, Mr. Rashid. We'll hear from Mr. Bowley. We'll have some regrettable time. Just to respond to the last point here about the, Mr. Rashid said that the terminal is outside the enclosure. He explained other parts are inside. That's exactly why the phrase, at least in part, is supported. These are all in an assembly relationship. There's the electrical movement inside, the terminal on the outside, and you have to have the terminal on the outside to get the electric signal out to make it useful to the gauge that reads this. One matter that's rather serious, and I hope the court will consider this. The Patent Office wants to ignore that Brzozowski even exists for purposes of Cochran's appeal here. In the director's brief on page 28, it says that, as the board and examiner reiterated numerous times, the Brzozowski patent and its corresponding prosecution history is not relevant to the prosecution of this application because, quote, each case is determined on its own merits, unquote. Citing Henry Jurek, 596, bed second, 1012. It continues, quote, in reviewing the specific rejections of specific claims, this court does not consider allowed claims in other applications or patents. It refers back to the cited case, Henry Jurek. That quotation is taken from Headnote 6 of the case as published in the USPQ. And if you read the corresponding part of that decision, that decision says nothing to this effect at all. So we do not want the court to be misled by what is apparently attributed as precedent of this court when it is not. Do you disagree with the proposition that quotation stands for? It depends upon the context, I believe. But in some cases, it may apply. Some cases, it may not. In this instance, the manner in which Cochran's application, CIP application has been examined, shows a disparity. And while there might be the opportunity for re-examination of the Brzezelski patent, what would be the standard for re-examination? Would it be under the case law and precedent prior to KSR? Or would it be decided later? This is an important distinction the court may be interested in. How about an invalidity suit against, in District 40? Who's manufacturing? Well, on the Brzezelski patent. I'm sorry, I don't know. I mean, I don't know. Because nobody has a commercial. Yeah, I don't know. I don't know that anybody's making. Yeah, that's. You said that this demonstrates a disparity. Well, I suppose that may be true. But why is the disparity prejudicial to your rights? In other words, if someone else gets treated better than I do, assuming that it isn't on a broad classification basis, but somebody else gets a driver's license in spite of the fact that they have poor eyesight. That doesn't prejudice me when they turn me down because my eyesight is poor. So, why does the fact that they may have made a mistake in the other case prejudice you, other than the fact that it's annoying to have a disparity, as I would be annoyed if somebody else got a driver's license. What we're saying when we look at the art cited in Brzezelski, two of the patents are the same as used in the rejection of Cochran's claims. There's a third reference that Brazil patent cited in Brzezelski, which examiner Williams would have had to consider. It has exactly, for purposes of examination, the same teaching that the primary reference Weibler has. It's no different. So what? I mean, they made a mistake, let's assume by hypothesis in that case. How does that affect you? How does it affect us? I'm submitting to the court that that was a factor. And please, if I may refer the court to the opening brief, this is discussed at great length as to what went on. And we have still, as I repeated, as I repeat what I said before, the court, we are trying to demonstrate to this court that under the KSR standards, this, the claims which are the subject of this appeal are still non-obvious and supported by the original disclosure back to Cochran's priority applications. And that's why we ask the court to reverse, not because Brzezelski was granted a patent. We're supporting our case. So the, in one sense, the pertinence of the fact that Brzezelski was granted a patent is what, to your case? The fact that it was granted a patent, it was before the same examiners who are presumed to be knowledgeable. They consider this prior art. It was decided under pre-KSR. Now the decision in question here relies on KSR. What we are saying is KSR reaffirmed Graham versus Deere principles, which allow evidence of secondary considerations, objective evidence. We presented objective evidence. It's on the record. There are no declarations or affidavits required to support that. It's on the record. That's what we're saying. Any more questions? Okay. Thank you, Mr. Bowler. Thank you very much. Mr. Rasheed, your case is taken under submission. Thank you.